DAVIS WRIGHT TREMAINE LLP
Scott R. Commerson (SBN 227460)
*scottcommerson@dwt.com*
James H. Moon (SBN 268215)
*jamesmoon@dwt.com*
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

DAVIS WRIGHT TREMAINE LLP
John A. Goldmark (*pro hac vice* forthcoming)
*johngoldmark@dwt.com*
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 622-3150
Facsimile: (206) 757-7700

DAVIS WRIGHT TREMAINE LLP
Joseph E. Addiego III (SBN 169522)
*joeaddiego@dwt.com*
505 Montgomery Street, Ste. 800,
San Francisco, California 94111-6533
Telephone: (415) 276-6500
Fax: (415) 276-6599

*Attorneys for Defendant Ring LLC*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

BRANDON JACK and JEAN ALDA, for themselves, as private attorneys general, and/or on behalf of all others similarly situated,

Plaintiffs,

vs.

RING LLC,

Defendant.

Case No. 21-544

**DEFENDANT RING LLC'S NOTICE OF REMOVAL**

[From the Superior Court of California, County of San Francisco, No. CGC-20-588258]

Compl. Filed: November 19, 2020
Action Removed: January 22, 2021

**TO THE CLERK AND TO PLAINTIFFS AND THEIR ATTORNEYS**:

**PLEASE TAKE NOTICE** that Defendant Ring LLC ("Ring") hereby removes this action from the Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California. Ring is entitled to remove this action to federal district court pursuant to 28 U.S.C. §§ 1332, 1441, 1446 based on the following:

**State Court Action**

1. On November 19, 2020, Plaintiffs Brandon Jack and Jean Alda ("Plaintiffs"), purportedly acting on their own behalf, as private attorneys general, and/or on behalf of all others similarly situated, commenced an action in the Superior Court of the State of California in and for the County of San Francisco, captioned *Jack v. Ring LLC*, Case No. CGC-20-588258 (the "State Court Action"). A true and correct copy of the complaint in the State Court Action served upon Ring is attached hereto as **Exhibit A** (the "Complaint").

2. On December 23, 2020, Ring was served with a copy of the Complaint and a summons from the State Court Action by personal service to its authorized agent. A true and correct copy of the Proof of Service of Summons as filed by Plaintiffs in the State Court Action is attached hereto as **Exhibit B**.

3. In addition to the Complaint and Proof of Service of Summons, all other pleadings, processes, and orders served upon or received by Ring in the State Court Action or found on the docket in the State Court Action are attached hereto.

a. The Summons is attached hereto as **Exhibit C**;

b. The Civil Case Cover Sheet is attached hereto as **Exhibit D**; and

c. The Notice to Plaintiff, Alternative Dispute Resolution Information Package, and Stipulation to Alternative Dispute Resolution are attached hereto as **Exhibit E**.

4. The State Court Action is removable to this Court because the Court has original jurisdiction and the Northern District of California encompasses the location in which the State Court Action is currently pending (*i.e.*, San Francisco, California). *See* 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have

original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such an action is pending.").

**The Action Is Removable Under the Class Action Fairness Act, 28 U.S.C. § 1332(d)**

5. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"). CAFA was enacted based on Congress's concern that "cases involving large sums of money, citizens of many different States, and issues of national concern, have been restricted to State courts even though they have national consequences." 151 Cong. Rec. S1086-01, S1103 (Feb. 8, 2005). CAFA's purpose is to allow "federal court consideration of interstate cases of national importance under diversity jurisdiction." 28 U.S.C. § 1711.

6. "[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

7. CAFA extends federal jurisdiction over class actions where: (1) any member of the proposed class is a citizen of a state different from any defendant (*i.e.*, minimal diversity exists); (2) there are at least 100 members in all proposed plaintiff classes combined; (3) the amount in controversy exceeds $5 million; and (4) no exception to jurisdiction applies. *See* 28 U.S.C. §§ 1332(d). As explained below, each of these requirements is satisfied in this case.

***The Minimal Diversity Requirement Is Satisfied***

8. A putative class action is removable based on diversity jurisdiction if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

9. Plaintiffs are citizens and residents of California. (Ex. A ¶¶ 13-14.) The putative classes they seek to represent are composed of California citizens. (*Id.* ¶¶ 84-88.)

10. Ring is a Delaware limited liability company. A limited liability company is a citizen of every state in which any member is a citizen. *See 3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018). Ring's member is a citizen of Washington and Delaware. No California citizens are members of Ring. Thus, Ring is a citizen of Washington and Delaware for determining minimal diversity.

11. Therefore, there is sufficient (and complete) diversity of citizenship between the relevant parties in this case.

***Plaintiffs' Proposed Class Exceeds 100 Members***

12. This action is a proposed "class action" under 28 U.S.C. § 1332(d)(1)(B), defined as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."

13. For a class action to be removable under CAFA, "the number of members of all proposed plaintiff classes in the aggregate" must be at least 100. 28 U.S.C. § 1332(5)(B).

14. Mr. Alda seeks to represent a class composed of "[a]ll California citizens who, during the applicable limitations period, purchased any Ring video doorbell or security camera product at a brick and mortar store in California where the outside box did not contain any language which indicated that the video recording, playback or snapshot features of the camera could only be accessed if the consumer also purchased an additional Protect Plan subscription for a monthly or annual fee." (Ex. A ¶ 85.)

15. Mr. Jack seeks to represent a class composed of "[a]ll California citizens who, during the applicable limitations period, purchased a 'Ring Video Doorbell 2' directly from Ring on Ring's e-commerce website." (Ex. A ¶ 88.)

16. The members of Plaintiffs' proposed classes exceed 100. Plaintiffs allege in their Complaint that the classes "easily comprise thousands of individuals." (Ex. A ¶ 90.)

***The Amount in Controversy Exceeds $5 Million***

17. Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Dart Cherokee*, 574 U.S. at 84. To establish the amount in controversy, a notice of removal "need not contain evidentiary submissions." *Id.* Rather, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554.

18. For purposes of removal only, and without conceding that Plaintiffs or the putative classes are entitled to any damages, remedies, or penalties whatsoever, the aggregated claims of

the putative class establish that the amount in controversy exceeds the jurisdictional minimum of $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2); *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 397 (9th Cir. 2010) (noting removing defendant need only show "that the potential damages could exceed the jurisdictional amount"); *Woods v. CVS Pharm., Inc.*, No. 14-0259, 2014 U.S. Dist. LEXIS 13339, at *5 (C.D. Cal. Jan. 30, 2014) ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.").

19.     The Complaint seeks "disgorgement or restitution" of "all revenues" that Defendant obtained from Plaintiffs and the members of the classes based on the unlawful conduct alleged in the Complaint, which includes sales of the Ring Video Doorbell 2 and Ring Floodlight Cam in California stores and online, over the past four years.  (Ex. A at pp. 28-29.)  Plaintiffs allege that the Ring Video Doorbell 2 at issue in their action was sold to both Plaintiffs for $199.  (*Id.*, Exs. A-B.)  Plaintiffs allege that the Ring Floodlight Cam at issue in their action was sold to Ms. Alda for $249.  (*Id.* ¶ 38, Ex. A.)  Over $5 million of the Ring Video Doorbell 2 and Ring Floodlight Cam products were sold to members of the putative classes as defined in the Complaint (e.g., in brick and mortar stores in California (for both products) and on Ring's e-commerce website (for the doorbell product)).  (*See id.* ¶¶ 85-88.)

20.     The Complaint further seeks an order granting Plaintiffs and class members the "ability to use the video recording, playback, and snapshot features off their Ring products at no charge . . . for the life of those devices."  (Ex. A at p. 29.)  The "value" of this injunctive relief for purposes of the jurisdictional inquiry depends on the value to the plaintiff or the cost to the defendant if such relief is granted.  *See Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017).  As alleged, the putative classes include "thousands" of individuals (conservatively, at least 2,000).  (Ex. A ¶ 90.)  Each would be entitled to $30 per year based on this form of relief ($72,000 in total per year).  (*Id.* ¶ 73.)  The $5,000,000 threshold would be met within the "life" of Ring's products even based on the conservative class size estimate.

21.     The Complaint also seeks attorneys' fees.  (Ex. A at p. 29.)  In class action cases involving (1) the same California consumer protection statute causes of action, (2) similar

allegations of false or misleading statements on product labels, and (3) similar complexity of issues and labeling claims, attorneys have sought in excess of $2-3 million in attorneys' fees. *See, e.g.*, *Brown v. Hain Celestial Group, Inc.*, No. 11-3082, 2016 U.S. Dist. LEXIS 20118 (N.D. Cal. Feb. 18, 2016) (UCL, FAL, and CLRA mislabeling class action; seeking approval in excess of $3 million in fees); *Hendricks v. Starkist Co.*, No.13-729, 2016 U.S. Dist. LEXIS 134872 (N.D. Cal. Sep. 29, 2016) (same); *Retta v. Millennium Products, Inc.*, No. 15–1801, 2017 U.S. Dist. LEXIS 220288 (C.D. Cal. Aug. 22, 2017) (same; seeking approval in excess of $2 million). These amounts should also be included in the amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998).

22. In sum, based on Plaintiffs' assertions and theories of recovery, the amount in controversy exceeds $5,000,000.

***Exceptions to Jurisdiction Do Not Apply***

23. The complete diversity between Plaintiffs and Ring not only satisfies the minimal diversity requirements under CAFA, but also precludes the "local controversy" and "home state" exceptions in 28 U.S.C. § 1332(d)(3) & (d)(4) (exemptions for which Plaintiffs would bear the burden of proof in any event).

**This Action Is Also Removable Based on Diversity, 28 U.S.C. § 1332(a)**

24. For the same reasons stated above, the Court has original jurisdiction of this action because Plaintiffs' claims alone exceed the $75,000 threshold for individual actions. *See* 28 U.S.C. § 1332(a).

25. As explained above, Plaintiffs and Ring are citizens of different states.

26. Plaintiffs' individual claims also exceed $75,000 based on their individual requests for monetary restitution, injunctive relief, attorneys' fees, and other relief. For instance, Plaintiffs seek "public injunctive relief" "requiring [Ring] to prominently disclose on the outside of the boxes of its Ring video doorbell and security camera products, and on the Ring website product pages for the products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring . . . ." (Ex. A at p. 28.)

The cost to Ring to change the packaging of its existing stock of products throughout the state and new products to be sold would exceed $75,000.

27. Plaintiffs also seek to recover in excess of $75,000 in attorneys' fees. (Ex. A at p. 29.) Courts have awarded in excess of $75,000 in individual cases alleging similar violations of California consumer protection statutes based on false or misleading statements. *See, e.g., Krumme v. Mercury Ins. Co.*, 123 Cal. App. 4th 924, 947 (2004).

**Ring Satisfies the Requirements of 28 U.S.C. § 1446**

28. This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1446(a).

29. This Notice of Removal has been filed within thirty days of service of the Complaint and summons on Ring.

30. Concurrently with the filing of this Notice, Ring will give written notice to all adverse parties and will file a copy of this Notice with the clerk of the Superior Court of the State of California in and for the County of San Francisco. *See* 28 U.S.C. § 1446(d).

31. Ring does not waive and expressly preserves all objections, defenses, and exceptions authorized by law, including but not limited to those permitted pursuant to Rule 12 of the Federal Rules of Civil Procedure.

WHEREFORE, Ring removes the State Court Action to this Court.

Dated: January 22, 2021

DAVIS WRIGHT TREMAINE LLP

By: /s/ Scott R. Commerson
Scott R. Commerson

*Attorneys for Defendant Ring LLC*

# EXHIBIT A

ENDORSED
FILED
Superior Court of California
County of San Francisco

NOV 19 2020

CLERK OF THE COURT
BY: ANNA L. TORRES
Deputy Clerk

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen DeNittis, Esq. (Pro Hac Vice application to be submitted)
Shane T. Prince, Esq. (Pro Hac Vice application to be submitted)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

Attorneys for Plaintiffs and the Proposed Classes

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**CITY AND COUNTY OF SAN FRANCISCO**

**UNLIMITED CIVIL**

| | |
|---|---|
| BRANDON JACK and JEAN ALDA, For Themselves, As Private Attorneys General, and/or On Behalf Of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>RING LLC,<br><br>Defendant. | Case No. CGC-20-588218<br><br>CLASS ACTION<br><br>COMPLAINT FOR:<br><br>(1) VIOLATION OF CAL. CIVIL CODE § 1750;<br>(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500;<br>(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200<br><br>JURY TRIAL DEMANDED |

Plaintiffs Brandon Jack and Jean Alda, individually, and as private attorneys general, and/or on behalf of all others similarly situated, allege as follows, on personal knowledge and investigation of their counsel, against Defendant Ring LLC ("Ring" or "Defendant"):

EXHIBIT A

## INTRODUCTION AND SUMMARY

1. This action is brought under California law, on behalf of Plaintiff Brandon Jack and Plaintiff Jean Alda, who purchased Ring video doorbell and Ring security camera products from Defendant, and who were not informed by Defendant at the time of purchase that the video recording, playback, and snapshot features which were key components of these products would only operate if Plaintiffs paid an additional fee of $3 per month (or $30 per year) per device for a subscription plan which Defendant refers to as the "Ring Basic Protect Plan" (hereinafter the "Protect Plan").

2. Ring video doorbells and security cameras have become ubiquitous in the past several years, with these products being promoted as a low-cost and efficient way of enhancing home security through monitoring one's front door and deterring potential intruders, "package thieves," vandals, and burglars.

3. A key feature of the Ring video doorbells and security cameras are that they record video footage and take still image snapshots which are stored and can be viewed and played back by the homeowner at a later time.

4. Without the ability to record video, take snapshots, or view, store and play back such video and still images, Ring video doorbells and security cameras are nothing more than an expensive electronic alternative to looking out one's window or a "peephole" to see who is currently standing at one's front door.

5. These video recording, playback and snapshot features of the Ring video doorbells and security cameras are only accessible by the consumer, however, if the consumer also buys an additional, inadequately disclosed Protect Plan service from Ring, which requires payment of an additional monthly fee of $3 (or yearly fee of $30) per device.

6. A homeowner who does not purchase Defendant's Protect Plan recording service for $3 per device per month (or $30 per device per year) can *only* see a "live feed" of whoever or whatever is standing in front of the camera at that particular moment. Such a homeowner cannot record or playback video or transfer or save any such images, and cannot view any moving or still images of the area before or after the current moment.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

7. This lawsuit does not contend that there is any defect with the Ring video doorbell products or security cameras themselves, or that it is inappropriate *per se* to require a purchaser of a Ring video doorbell or security camera to purchase an additional subscription service in order to enable the camera to record video and play back moving or still images.

8. Rather, the central claims in this case are that:

(a) the video recording, playback and snapshot features of the Ring video doorbell and security camera products are essential to the products' utility and value and are a key reason why Plaintiffs purchased the products;

(b) the fact that Ring required Plaintiffs to make an additional purchase of Protect Plan service subscriptions, for an *additional* fee per device of $3 per month or $30 per year, in order to enable these key product functions was a material fact that Defendant should have clearly disclosed to Plaintiffs before purchase so Plaintiffs could make an informed decision at the time of purchase; and

(c) Defendant's failure to do so amounts to a material omission of fact and a deceptive and misleading practice in the sale of goods in violation of California law.

9. Ring's conduct and its omissions of material facts on its package advertising and on its website have enabled Ring to entice customers to purchase its video security products by misrepresenting the cost customers must pay for Ring products with functioning video recording, playback and snapshot features, both in absolute dollar costs and relative to the price of competing security camera products from other manufacturers which—unlike Ring—*include* free cloud recording, playback and snapshot features *without* requiring the payment of additional monthly or yearly fees.

10. Plaintiffs Brandon Jack and Jean Alda bring this action each individually as deceived Ring LLC customers and also as private attorneys general seeking an order for public injunctive relief to protect the general public, directing that the outside product packaging for Ring video doorbells and security cameras and that Ring's website product pages for the products include prominent disclosures that the video recording, playback, and snapshot

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional fee of $3 per month or $30 per year per device.

11. Plaintiffs also bring this action as representative plaintiffs on behalf of classes and subclasses of California consumers who purchased Ring video doorbell and video security products, seeking, among other things that Defendant be ordered to disgorge all revenues Defendant has unjustly received from the members of the classes. Plaintiffs also seek an order requiring Defendant to offer Plaintiffs and class members the ability to use the video recording, playback and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

12. Plaintiffs bring these claims under California statutory authority and principles of equity including the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; the False Advertising Law, California Business & Professions Code § 17500 *et seq.*; and the Unfair Competition Law, California Business & Professions Code § 17200 *et seq*.

**THE PARTIES**

13. Plaintiff Brandon Jack is a citizen of the United States of America and California and is an individual and a natural adult person who resides in San Francisco County, California.

14. Plaintiff Jean Alda is a citizen of the United States of America and California and is an individual and a natural adult person who resides in Fresno, California.

15. Defendant Ring LLC is a limited liability corporation with its principal place of business and/or nerve center located at 523 26th Street, Santa Monica, California 90404. Ring LLC manufactures, distributes, markets and sells the Ring Video Doorbell 2 and Ring security cameras purchased by the Plaintiffs, designs the packaging in which such products are sold in brick and mortar stores, designs the website on which Defendant sells these products directly online, and implements the policies alleged herein, from its headquarters in California.

**JURISDICTION AND VENUE**

16. **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over this civil action in that Plaintiffs bring claims exclusively under California law, including the

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*; the False Advertising Law, California Business & Professions Code § 17500 *et seq.*; and the Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*

17. **Personal Jurisdiction**. This Court has personal jurisdiction over Defendant because Defendant Ring LLC is a citizen of California, is headquartered in Santa Monica, California and is authorized to do business and regularly conducts business in the State of California.

18. **Venue**. Venue is proper in San Francisco because Plaintiff Brandon Jack is a California citizen who resides in San Francisco, California and the products at issue were purchased from, and delivered to, Plaintiff Brandon Jack's home in San Francisco, California.

## FACTUAL ALLEGATIONS

19. Ring holds itself out to the public as a leader in home security which manufactures home security products that incorporate indoor and outdoor motion-detecting cameras, including Ring video doorbells and security cameras.

20. The Ring video doorbell is the company's flagship product. The first version of the Ring video doorbell (hereinafter, the "Ring Video Doorbell 1") was introduced in 2013. The Ring video doorbell products are marketed as a smart doorbell that contains a high-definition video camera, a motion sensor, and a microphone and speaker for two-way communication.

21. The Ring video doorbell integrates with an associated smartphone "app," which allows users to view real-time and recorded video from the camera, receive notifications when the doorbell is rung, communicate with visitors at the door, and share the recorded video and snapshots with friends and family.

22. In 2015, Ring came out with its first video security camera, called the "Ring Indoor Cam Plug-In Security Camera," which is a camera with "live-feed" viewability and video recording and playback features.

23. In 2017, a second-generation video doorbell, the Ring Video Doorbell 2, was released with updated hardware and improved low-light performance.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

24.     Ring widely markets these products as having the capability of operating as a surveillance camera that can automatically trigger recordings when rung, or when its motion sensors are activated.[1]

25.     Without the ability to record video and capture still images, or to playback, store and view such video and still images, Ring video doorbells and security cameras are nothing more than expensive electronic alternatives to looking out a window or "peephole" to see who is currently standing in front of the camera.

26.     Ring also hosts and promotes an app known as "Neighbors," which permits online social sharing of captured video footage among users in an effort to capture video of criminals and increase homeowner safety. Ring advertises how its products enhance homeowner security by providing video footage from its cameras and data from its Neighbors app to law enforcement agencies upon request.[2] Ring promotes that it has partnerships with local police departments in some cities to incorporate the Neighbors app into their crime monitoring processes. Ring has credited the service with having helped to solve crimes, and noted that activity on the service surged in California regions affected by wildfires in November 2018.[3]

27.     Without the video recording, playback and snapshot features on the Ring products, the Neighbors app and its features to improve homeowner security would be rendered useless.

28.     The video recording, playback, and snapshot features are fundamental features of the Ring video doorbells and security cameras. Indeed, the Ring devices lose much of their

---

[1] *See* Paresh, Dave, "Ring modernized the doorbell, then its inventor, Jamie Siminoff, went to war against crime," Los Angeles Times, May 12, 2017, *available at* https://www.latimes.com/business/technology/la-fi-tn-ring-jamie-siminoff-20170412-htmlstory.html.

[2] *See* Schlosser, Kurt, "In first move since Amazon acquisition, Ring launches Neighbors app to help users fight crime," GeekWire, May 8, 2018, *available at* https://www.geekwire.com/2018/first-move-since-amazon-acquisition-ring-launches-neighbors-app-help-users-fight-crime/.

[3] *See* Rubin, Ben Fox, "How Ring's Neighbors app is making home security a social thing," CNET, December 3, 2018, *available at* https://www.cnet.com/news/how-rings-neighbors-app-is-making-home-security-a-social-thing/.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

usefulness and effectiveness without the video recording, playback, and snapshot features. For example, unless a user spends virtually all of that user's time looking in real time at the "live feeds" on the Ring device for a possible trespasser, that trespasser is gone before the user can process the Ring notification and pull up the live feed on the device to "catch" the trespasser or would-be criminal.

29. These video recording, playback and snapshot features of the Ring video doorbell and security camera are only accessible to the consumer, however, if the consumer also buys an additional Protect Plan "subscription" service from Ring and pays a monthly fee of $3, or a yearly fee of $30, per device in perpetuity.

30. The first Ring video doorbell product offered to the public was the Ring Video Doorbell 1, introduced in 2013. The Ring Video Doorbell 1 is still offered today and currently sells for a price at or around $99.99.

31. The Ring Video Doorbell 1 (which is not the subject of this lawsuit) was sold in brick and mortar stores in a sealed box whose outside packaging clearly states that the video recording, playback and snapshot functions of the product will not function unless the consumer also purchases the Protect Plan subscription service and pays a monthly fee of $3 to Defendant.

32. Specifically, the back of the sealed box of the Ring Video Doorbell 1 states:

**"Optional Video Recording**
**Protect Plans start at only $3/month."**

33. The box for the Ring Video Doorbell 1 also clearly states:

**"Snapshot Capture**
**View and save photos with**
**optional Ring Protect…"**

34. Such language on the box of the Ring Video Doorbell 1 clearly advises consumers of the fact that both the "Video Recording" and "Snapshot Capture" features of the Ring Video Doorbell 1 are **"optional"** and that to activate these features the customer must make an additional purchase of a "Protect Plan" from Ring for "**$3/month**."

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

35.     The fact that such notice and disclosure was expressly placed by Defendant on the outside of the sealed box of the Ring Video Doorbell 1—a product which is still being sold today—shows that Defendant considered this information to be material to consumers and/or is aware of its materiality.

36.     Unfortunately, the packaging for many *other* Ring products sold in brick and mortar stores fails to disclose the $3 monthly or $30 yearly fee, per device, which must be paid separately to use the necessary features of video recording, playback and snapshots, including the Ring Video Doorbell 2 and Ring security camera products purchased by Plaintiff Jean Alda.

37.     Plaintiff Alda's experience highlights this problem.

38.     On September 16, 2017 Plaintiff Alda purchased a Ring Video Doorbell 2 for $199.00 and a Ring Floodlight Cam for $249.00 from a Home Depot store located at 3272 West Shaw Avenue, Fresno, California. See attached **Exhibit A**, Alda Receipt.

39.     Plaintiff Alda decided to buy these products for home security.

40.     Before purchasing these products, he examined the sealed boxes in which the products were sold.

41.     The sealed box for the Ring Floodlight Cam advertised key features of the camera. Nowhere on the box, however, was there a statement or disclosure that Plaintiff Alda would be required to pay a monthly fee of $3 (or a yearly fee of $30) to use the advertised and basic video recording and playback feature of the camera or the snapshot feature.

42.     The sealed box for the Ring Video Doorbell 2 also advertised various camera and video features. But nowhere on the box was there a statement or disclosure that Plaintiff Alda would be required to pay a monthly fee of $3 (or a yearly fee of $30) to use the video recording, playback or snapshot features.

43.     Based on the advertising and product information on the boxes of the two products, Plaintiff Alda reasonably believed that the purchase price for each of the products included access to and use of the fundamental recording and playback features of the products.

44.     Relying on the advertising and production information on the product boxes, Mr. Alda purchased one Ring Floodlight Cam and one Ring Video Doorbell 2.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

45. At no time before purchase was Plaintiff Alda ever made aware, and at no time before purchase was Plaintiff Alda aware or did he believe, that he would have to purchase a Protect Plan and pay $3 per month or $30 per year, per device, in order to utilize the video recording, playback, and snapshot features of the Ring Floodlight Cam or the Ring Video Doorbell 2. Rather, Plaintiff Alda reasonably believed at the time of purchase that the purchase price for the products *included* the ability to use these fundamental features which were important to Mr. Alda.

46. After purchasing the Ring products, Plaintiff Alda installed the Ring app on his smartphone and registered the devices he had purchased with Ring. It was then that Mr. Alda learned for the first time that he would have to pay an additional $3 per month to activate the products' recording and playback features.

47. Plaintiff Jean Alda had been defrauded.

48. Mr. Alda was upset about having to pay $3 per month extra for each of these two devices to get the video recording, video playback, and the snapshot features to work because he believed they were necessary and essential features of the products which he had intended to utilize.

49. Indeed, Plaintiff Alda's smartphone often notifies him of a motion detected by his Ring cameras, but typically by the time he is able to respond to look on the Ring app on his phone, whoever or whatever caused the alert is gone and the only way to see who or what it was is for him to use the product's recording and playback features.

50. Thus, when Plaintiff Alda learned, after his purchase, of the additional fee needed to activate these essential features, Plaintiff Alda felt he had no choice but to give in this demand of an additional charge by Defendant to make these features function.

51. Upon further investigation, counsel for Mr. Alda discovered that the packaging for many other Ring products likewise fails to disclose the $3 monthly or $30 yearly fee per device required to use the necessary features of video recording, playback, and snapshots, including: the Ring Video Doorbell Pro Camera, the Ring Stick Up Indoor/Outdoor Wired Camera, the Ring Stick Up Indoor/Outdoor Wire-Free Camera, and the Ring Spotlight Cam.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

52. In addition to selling Ring products in brick and mortar stores via third party retailers, Ring also maintains an e-commerce website on which Ring directly sells Ring products to consumers.

53. Like the sealed box in which the Ring Video Doorbell 2 is sold in brick and mortar stores, Defendant's product webpages on the Ring website likewise did not adequately disclose to prospective purchasers that these key features of the Ring Video Doorbell 2 would not function unless and until the purchaser paid an additional $3 monthly or $30 yearly fee, per device.

54. Plaintiff Brandon Jack's experience highlights this problem.

55. On or about May 14, 2019, Mr. Jack purchased two (2) Ring Video Doorbell 2 devices for a total purchase price of $398.00 directly from Ring on Ring's e-commerce website. See attached **Exhibit B**, Jack Receipt.

56. At the time of his purchase, Plaintiff Jack, who resides in San Francisco, was seeking video security devices for his second home in the Lake Tahoe area. Video recording and playback features were particularly important to him because he was purchasing the devices to monitor and playback events which would happen at his Lake Tahoe house while he was hours away in the San Francisco area.

57. Plaintiff Jack had previously heard about Ring from the television show Shark Tank.

58. On or about May 14, 2019, from his home in San Francisco, Mr. Jack went to the Ring website to learn about Ring's video doorbell products. Mr. Jack viewed the product webpage for the Ring Video Doorbell 2. Mr. Jack viewed product information displayed on the webpage. Based on the information and description of the product on the webpage, Mr. Jack reasonably believed that the basic video recording, playback, and snapshot features of the Ring Video Doorbell 2 were included and operational at the advertised $199.00 price.

59. There was no obvious or adequate disclosure on the product webpage that Mr. Jack would be required to pay a monthly fee of $3 (or a yearly fee of $30) to use the video recording, playback, or snapshot features.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

60. Relying on the advertising, representations and production information on the product webpage, Mr. Jack purchased two Ring Video Doorbell 2 devices from Ring's e-commerce website and he had them shipped to his primary home in San Francisco.

61. At no point during the purchase process did Ring provide a prominent or adequate disclosure to Mr. Jack that he would be required to pay a monthly fee of $3 (or a yearly fee of $30) to use the video recording, playback, or snapshot features.

62. At no time prior to his purchase was Mr. Jack ever made aware, and at no time before the purchase was Mr. Jack aware or did he believe, that he would have to purchase a Protect Plan and pay $3 per month or $30 per year, per device, in order to utilize the video recording, playback, and snapshot features of the Ring Video Doorbell 2 devices. Rather, Plaintiff Jack reasonably believed at the time of purchase that the $199.00 purchase price for each product included the ability to use these fundamental features which were important to Mr. Jack.

63. After installing the two Ring Video Doorbell 2 devices at his Lake Tahoe house, Plaintiff Jack downloaded the Ring App and registered his products with Ring. It was at that point that Mr. Jack discovered and was advised for the first time that it would cost him $3 per month for each video doorbell to utilize the critical video playback, video recording, and snapshot features.

64. These video playback and recording features were essential to Plaintiff Jack's use of the products; indeed, they were essential features to the typical consumer. In fact, Mr. Jack discovered that there is a six to ten second delay between the time a user's smartphone is notified by Ring that the motion detector of the device has been activated, and the time the customer is able to pull up the live feed video. By then, whoever or whatever activated the motion sensor is typically no longer visible on the live feed and can only be seen if the playback feature of the device is used.

65. Plaintiff Brandon Jack had been defrauded.

66. Plaintiff Jack was upset when he learned that he would have to pay a subscription fee of $3 per month, per device, in perpetuity, simply to use these essential

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

features of his video doorbell cameras which Ring had previously led him to believe were included in the initial product purchase price.

67. However, at that point, Plaintiff Jack had already installed the products at his Lake Tahoe house and it would have taken additional time and expense to remove the video doorbells that he had already installed. Moreover, he was not certain that he could even return the products as they had already been installed on the house.

68. Thus, Plaintiff Jack paid the additional $3 per month, per device fee demanded by Defendant to make these essential product features function.

69. Plaintiff Jack continues to pay subscription fees for the Protect Plan because he continues to require the video recording, playback, and snapshot features of the video doorbells to function to get any benefit out of the products.

70. Plaintiff Jack avers, however, that if he had been made aware before purchase that there was a $3 additional fee charged per month, per device, to make the recording and playback features function, he would not have purchased these Ring products and would have instead shopped the market for a video doorbell that included these features without requiring the payment of an additional fee (and indeed, there exist other such competing products, as described below).

71. Upon further investigation, counsel for Mr. Jack discovered that the product webpages on the Ring website for many other Ring products likewise failed to adequately disclose the $3 monthly or $30 yearly fee per device required to use the necessary features of video recording, playback, and snapshots.

72. This lawsuit does not contend that there is any defect with any version of the Ring video doorbells or security cameras, in and of themselves, or that it is inappropriate *per se* to require a purchaser of a Ring video doorbell or security camera to purchase an additional monthly or yearly Protect Plan subscription service in order to use the video recording, playback, and snapshot functions of the device.

73. Rather, the central claim in this case is that, if Defendant Ring is going to require a consumer who buys a Ring video doorbell or security camera to make an additional

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

purchase of the Protect Plan for $3 per month or $30 per year in order to enable the crucial video recording, playback, and snapshot features of the cameras—features without which the cameras are of minimal utility—the existence of this required extra ongoing subscription fee is a material fact that should have been stated clearly to Plaintiff Alda on the box at the point of sale (as Ring did for the original Ring Video Doorbell 1) and to Plaintiff Jack on the Ring website where he purchased his Ring Doorbell 2 products.

74. As described above, the investigation of Plaintiffs' counsel revealed that the Ring Video Doorbell 1 (which was Ring's very first product) is the <u>only</u> Ring product for which Ring disclosed on the outside box that a "$3/month" subscription to the Ring Protect Plan service is required to access the recording, playback, and snapshot features.

75. The disclosures on the Ring Video Doorbell 1 packaging that the video recording, playback, and photo snapshot features require an additional $3 monthly fee underscores the materiality of such disclosures. If Ring believed such disclosures were necessary and material to state on the outside box for the Ring Video Doorbell 1 (Ring's very first product), then Ring should have also placed such clear disclosures on the packaging for <u>all</u> of its video doorbell and security camera products released thereafter, and on the Ring product webpages on Ring's e-commerce website.

76. The lack of such notice constituted misrepresentations and omissions of material facts that were deceptive and misleading in violation of California law.

77. These misrepresentations and omissions have enabled Ring to entice Plaintiffs to purchase its video security products by misrepresenting the cost customers must pay for Ring products with functioning video recording, playback, and snapshot features, both in absolute dollar costs, and relative to the price of competing security camera products from other manufacturers which, unlike Ring, often include *free* video recording (including *free* cloud recording), playback, and snapshot features without requiring the payment of additional monthly or yearly fees.

78. Indeed, numerous other competing security camera products—unlike Ring's security camera products—include local device storage capability and/or some amount of free

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

cloud storage for saving and playback of videos and snapshots *at no extra cost* above the product's initial purchase price. For example, Amazon.com, Inc—which is the parent company of Ring LLC—manufactured and offered on its website its own Amazon-branded "Amazon Cloud Cam Indoor Security Camera," whose $119.99 selling price included *free* cloud recording, *free* playback and *free* snapshots for the past 24-hour period. Wyze Labs, Inc. offers *free* cloud storage of videos and snapshots for a 14-day period for its Wyze Cam security cameras, whose selling prices start at only $25.98 on Amazon.com; the cameras also offer local device storage capability for saving and playback. Arlo Technologies, Inc. similarly offers *free* cloud storage for a 7-day period for its popular Arlo line of security cameras.

79. Likewise, many competing video doorbell products—unlike Ring's video doorbell products—include local device storage capability and/or some amount of free cloud storage for saving and playback of videos and snapshots *at no extra cost* above the product's initial purchase price. For example, Remo+ offers *free* cloud storage of videos and snapshots for a 3-day period for its Remo video doorbell products, whose list prices start at $99.99. Other competing video doorbell products—unlike Ring's video doorbell products—allow consumers to locally store and play back recorded video for no charge without requiring a cloud subscription. For example, Anker Technology Ltd.'s "eufy" video doorbells, whose list prices start at $119.99, contain enough internal memory to store and play back up to 30 days of motion-triggered recorded video for *free*, such that no cloud subscription or additional payments are required to utilize the video recording, playback and snapshot features of the devices.

80. In sum, based on Ring's misrepresentations and omissions of material facts, Plaintiffs reasonably assumed and understood that the video recording, playback, and snapshot features of the Ring video doorbells and security cameras they purchased were included in the purchase price they paid. A reasonable consumer would not understand or expect that these fundamental security features in fact required an additional subscription of $3 per month or $30 per year, per device, in perpetuity.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

81.     These misrepresentations and omissions by Defendant are material, in that they are the type of representations on which an ordinary prudent person would rely upon in conducting his or her affairs.

82.     As a direct and proximate result of Defendant's acts and omissions, Plaintiffs were harmed, suffered an injury-in-fact, and lost money or property.

83.     Defendant is primarily engaged in the business of selling or leasing goods or services. Each cause of action brought by Plaintiffs against Defendant in this pleading arises from and is limited to statements or conduct by Defendant that consist of representations of fact about Defendant or a business competitor's business operations, goods or services that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, Defendant's goods or services or the statement or conduct was made in the course of delivering Defendant's goods or services. Each cause of action brought by Plaintiffs against Defendant in this pleading arises from and is limited to statements or conduct by Defendant for which the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential buyer or customer.

## CLASS ACTION ALLEGATIONS

84.     Plaintiffs bring this class-action lawsuit on behalf of themselves and the members of the following classes and subclasses:

85.     **In-Store Main Class**: Plaintiff Jean Alda seeks to represent the following "In-Store Main Class":

> **All California citizens who, during the applicable limitations period, purchased any Ring video doorbell or security camera product at a brick and mortar store in California where the outside box did not contain any language which indicated that the video recording, playback or snapshot features of the camera could only be accessed if the consumer also purchased an additional Protect Plan subscription for a monthly or annual fee.**

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

86. **<u>In-Store Ring Video Doorbell 2 Subclass</u>**: Plaintiff Jean Alda also seeks to represent the following "In-Store Ring Video Doorbell 2 Subclass":

> **All California citizens who, during the applicable limitations period, purchased a "Ring Video Doorbell 2" product at a brick and mortar store in California.**

87. **<u>In-Store Ring Floodlight Cam Subclass</u>**: Plaintiff Jean Alda also seeks to represent the following "In-Store Ring Floodlight Cam Subclass":

> **All California citizens who, during the applicable limitations period, purchased a "Ring Floodlight Cam" product at a brick and mortar store in California.**

88. **<u>Ring Website Video Doorbell 2 Class</u>**: Plaintiff Brandon Jack seeks to represent the following "Ring Website Video Doorbell 2 Class":

> **All California citizens who, during the applicable limitations period, purchased a "Ring Video Doorbell 2" directly from Ring on Ring's e-commerce website.**

89. Specifically excluded from the classes and subclasses are Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in Defendant, Defendant's agents and employees and attorneys, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

90. ***Numerosity.*** Plaintiffs do not know the exact number of class members, but are informed and believe that the classes easily comprise thousands of individuals. As such, class members are so numerous that joinder of all members is impracticable.

91. No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between class members and Defendant, or of any subject belief of Plaintiffs or individual class members.

92. ***Commonality and Predominance.*** Well-defined, identical legal or factual questions affect the members of the classes. All claims in this matter regarding the In-Store Classes arise from the identical written advertising and omissions of material facts on the outside packaging of the products purchased by the class and subclass members, none of which contains any language which would advise the purchaser that the video recording, playback or

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

snapshot features of the camera could only be accessed if the consumer also purchased an additional subscription for a fee of $3 per month or $30 per year. All claims in this matter regarding the Ring Website Video Doorbell 2 Class arise from written advertising and omissions of material facts on the Ring Video Doorbell 2 product webpages viewed by the class members on Ring's e-commerce website. These questions predominate over questions that might affect individual class members. These common questions include, but are not limited to, the following:

a. Whether Ring's failure to state on the product packaging of its video doorbell and security camera products that the video recording, playback and snapshot features could only be accessed if the consumer paid an additional monthly fee of $3 or yearly fee of $30 was an omission of material facts in violation of California law;

b. Whether Defendant's decision to include statements on the sealed outside packaging of the Ring Video Doorbell 1 that advised consumers that the video recording, playback, and snapshot features of the product could only be accessed if the consumer paid an additional $3/month subscription fee, should be deemed an admission that those facts were material to potential customers;

c. Whether Ring's failure to adequately state on the Ring website product webpages for the Ring Video Doorbell 2 that the video recording, playback, and snapshot features could only be accessed if the consumer paid an additional monthly fee of $3 or yearly fee of $30 was an omission of material facts and/or deceptive in violation of California law;

d. Whether Defendant's misrepresentations and omissions alleged herein constitute fraudulent concealment under California law;

e. Whether Defendant's conduct as outlined herein violated the False Advertising Law, California Business and Professions Code § 17500 *et seq.*;

f. Whether Defendant's conduct as outlined herein violated the Consumers Legal Remedies Act, California Civil Code § 1750 *et seq*;

g. Whether Defendant's conduct as outlined herein violated California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*;

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

h. Whether Plaintiffs and the classes have suffered injury and have lost money or property as a result of Defendant's misrepresentations and omissions alleged herein;

i. Whether Defendant should be ordered to disgorge its unjust enrichment;

j. Whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and

k. Whether Plaintiffs and the classes are entitled to an order for class-wide injunctive relief, imposing equitable remedies such as restitution and/or requiring Ring to give Plaintiffs and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

93. The prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to individual members of the classes which would establish incompatible standards of conduct for the parties opposing the classes.

94. ***Typicality.*** Plaintiffs are members of the classes and subclasses they seek to represent. The claims of Plaintiffs are not only typical of all class and subclass members, they are identical.

95. All claims of Plaintiff Jean Alda and the In-Store Classes arise from the same misrepresentations and omissions of material fact on the sealed outside product packaging for Ring video doorbell cameras and security cameras. All claims of Plaintiff Brandon and the Ring Website Video Doorbell 2 Class arise from the same misrepresentations and omissions of material fact on the Ring website product pages for the Ring Video Doorbell 2.

96. All claims of Plaintiffs and the classes are based on the exact same legal theories.

97. ***Adequacy.*** Plaintiffs have no interest antagonistic to, or in conflict with the classes. Plaintiffs will thoroughly and adequately protect the interests of the classes, having retained qualified and competent legal counsel to represent themselves and the classes.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

98. Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for class members to seek individual redress for Defendant's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiffs do not anticipate any difficulties in managing a class action trial.

99. By its conduct and omissions alleged herein, Defendant has acted and refused to act on grounds that apply generally to the classes, such that final injunctive relief and/or declaratory relief is appropriate respecting the classes as a whole.

100. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

101. A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member are too small to make individual actions economically feasible.

102. Common questions will predominate, and there will be no unusual manageability issues.

## CAUSES OF ACTION

### COUNT I
### Violation of the Consumers Legal Remedies Act
### California Civil Code § 1750 *et seq.*

103. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

104. Plaintiffs each bring this claim in their individual capacity, in their capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the classes.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

105. Defendant is a "person," as defined by California Civil Code § 1761(c).

106. Plaintiffs and class members are "consumers," as defined by California Civil Code § 1761(d).

107. The Ring video doorbells and security cameras purchased by Plaintiffs and class members are "goods" as defined by California Civil Code § 1761(a).

108. The purchases by Plaintiffs and class members constitute "transactions," as defined by California Civil Code § 1761(e).

109. The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Defendant did not result from a *bona fide* error notwithstanding the use of reasonable procedures adopted to avoid such error.

110. With regard to this count of the pleading which alleges one or more violations of the CLRA, venue is proper in San Francisco County, California (the county in which this action has been commenced) pursuant to Section 1780(d) of the California Civil Code because, without limitation, San Francisco County is a county in which Defendant is doing business and is the county where the transaction involving Plaintiff Jack which is the subject of this lawsuit occurred. A declaration establishing that this Court has proper venue for this count is attached hereto as **Exhibit C**.

111. Defendant's methods, acts and/or practices, including Defendant's misrepresentations, active concealment, and/or failures to disclose, violated the CLRA in ways including, but not limited to, the following:

a. Defendant misrepresented that its products had characteristics, benefits, or uses that they did not have (Cal. Civ. Code § 1770(a)(5));

b. Defendant advertised its products with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9)); and

c. Defendant represented that its products were supplied in accordance with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)).

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

112.    Specifically, Defendant advertised, represented and/or indicated that its products had the ability to record and playback video and capture snapshots, but in reality these material features were available only upon the purchaser's payment of an additional $3 per month or $30 per year per device to Defendant.

113.    With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiffs and class members; (b) Defendant concealed material information from Plaintiffs and class members; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

114.    Defendant's misrepresentations and nondisclosures deceive and have a tendency and ability to deceive the reasonable consumer.

115.    Defendant's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions. Indeed, the utility and value of Defendant's Ring doorbell and security camera products are significantly reduced, almost to the point of worthlessness, without the ability to record and playback video and capture snapshots.

116.    Plaintiffs and class members reasonably relied on Defendant's misrepresentations.

117.    Plaintiffs and class members reasonably relied on Defendant's nondisclosures and omissions of material facts.

118.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiffs and class members suffered injury-in-fact and lost money.

119.    But for Defendant's deceptive conduct and omissions of material facts, Plaintiffs and class members made purchases they otherwise would not have made, paid more than they otherwise would have paid for the products they purchased, and paid more for utilizing the key video recording, video playback, and snapshot features of the products than they otherwise would have paid.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

120. Defendant's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Defendant to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

121. Defendant's conduct as alleged herein caused substantial injury to Plaintiffs, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiffs and the classes seek an order enjoining Defendant from committing such practices.

122. If not enjoined by order of this Court, Defendant is free to resume its unlawful behavior and injure Plaintiffs and consumers in California through the misconduct alleged herein once more. Defendant has a duty to speak truthfully or in a non-misleading manner.

123. Plaintiffs would purchase Ring products again if they could have confidence regarding the truth of Defendant's representations of the features included with the purchase price of the products.

124. Plaintiffs will be harmed if, in the future, they are left to guess as to whether Defendant's representations are accurate and whether there are omissions of material facts regarding the features included in the purchase price of Ring products.

125. In order to prevent injury to the general public, Plaintiffs, each in their individual capacity, seek a public injunction requiring Defendant to disclose, on the outside of the boxes of its Ring video doorbell and security camera products, and on the website product pages for its products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month or $30 per year.

126. The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiffs and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. Plaintiffs and the general public lack an adequate remedy at law. A permanent injunction against Defendant is in the public interest.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Defendant's unlawful behavior is capable of repetition or re-occurrence absent the entry of a permanent injunction.

127. Plaintiffs do not currently seek damages in this Complaint under the CLRA.

128. In accordance with California Civil Code § 1782(a), on November 18, 2020, counsel for Plaintiffs served Defendant with notice of its CLRA violations via USPS certified mail, return receipt requested.

129. If Defendant fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiffs' notification letter, Plaintiffs will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

**COUNT II**
**Violation of California's False Advertising Law**
**California Business and Professions Code § 17500 *et seq.***

130. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

131. Plaintiffs each bring this claim in their individual capacity, in their capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the classes.

132. Defendant has engaged in false or misleading advertising in violation of California's statutory False Advertising Law ("FAL").

133. Defendant's conduct as described herein is misleading, and/or has a capacity, likelihood or tendency to deceive reasonable consumers. *See, e.g., Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951, 119 Cal. Rptr. 2d 296, 45 P.3d 243 (2002)(UCL and FAL prohibit "not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (same).

134. Defendant, with intent directly or indirectly to dispose of personal property or to perform services, or to induce the public to enter into any obligation relating thereto, makes,

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

disseminates, has made or disseminated, causes to be made or disseminated, and/or has caused

to be made or disseminated, before the public in the United States, in newspaper or other

publication, or other advertising device, or by public outcry or by proclamation, or in any other

manner or means, including over the internet, statements concerning that personal property or

those services, and/or concerning any circumstance or matter of fact connected with the

proposed performance or disposition thereof, which are untrue or misleading and which are

known (or which by the exercise of reasonable care should be known) to be untrue or

misleading.

135.    With respect to omissions, Defendant at all relevant times had a duty to disclose

the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of

material information that was not known to Plaintiffs and class members; (b) Defendant

concealed material information from Plaintiffs and class members; and/or (c) Defendant made

partial representations which were false and misleading absent the omitted information.

136.    Defendant committed such violations of the False Advertising Law with actual

knowledge that its advertising was misleading, or Defendant, in the exercise of reasonable care,

should have known that its advertising was misleading.

137.    Plaintiffs and class members reasonably relied on Defendant's representations

and/or omissions made in violation of the False Advertising Law.

138.    As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent

conduct, Plaintiffs and class members suffered injury-in-fact and lost money.

139.    But for Defendant's omissions of material facts and Defendant's deceptive

conduct, Plaintiffs and class members made purchases they otherwise would not have made,

paid more than they otherwise would have paid for the products they purchased, and paid more

for utilizing the key video recording, video playback, and snapshot features of the products than

they otherwise would have paid.

140.    Defendant's false advertising scheme has harmed all of its customers by

fraudulently increasing demand for its products, thereby shifting the demand curve and

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

enabling Defendant to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

141. Plaintiffs, class members, and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

142. Defendant's conduct as alleged herein caused substantial injury to Plaintiffs, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Defendant from committing such violations of the FAL. Plaintiffs further seek an order granting restitution to Plaintiffs and the classes in an amount to be proven at trial. Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

143. Plaintiffs, on behalf of themselves and the classes, seek injunctive relief to require Defendant to give Plaintiffs and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

144. Absent injunctive relief, Defendant will continue to injure Plaintiffs and class members. Defendant's demands that class members pay an additional monthly or yearly fee in order to make their devices function properly are ongoing. Even if such conduct were to cease, it is behavior that is capable of repetition or reoccurrence by Defendant.

145. In order to prevent injury to the general public, Plaintiffs, each in their individual capacity, seek a public injunction requiring Defendant to disclose, on the outside of the boxes of its Ring video doorbell and security camera products, and on the Ring website product pages for the products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month or $30 per year.

**COUNT III**
**Violation of California's Unfair Competition Law**
**California Business and Professions Code § 17200 *et seq.***

146. Plaintiffs reallege and incorporate by reference all paragraphs previously alleged herein.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

147. Plaintiffs each bring this claim in their individual capacity, in their capacity as a private attorney general seeking the imposition of public injunctive relief, and/or as a representative of the classes.

148. Defendant's acts and omissions alleged herein constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of California Business and Professions Code § 17200 et seq. (the "Unfair Competition Law" or "UCL").

149. Defendant's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs, class members, and the public. There is no utility to Defendant's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Defendant's conduct alleged herein.

150. Defendant's conduct and omissions alleged herein also violate California public policy, including as such policy is reflected in Cal. Civ. Code § 1750 et seq. and Cal. Civ. Code §§ 1709-1710.

151. By its conduct and omissions alleged herein, Defendant has violated the "unlawful" prong of the UCL, including by making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 et seq. and Cal. Civ. Code § 1750, *et seq*.; and engaging in deceit and fraudulent concealment in violation of Cal Civ. Code §§ 1709-1710, *et seq*.

152. With respect to omissions, Defendant at all relevant times had a duty to disclose the information in question because, *inter alia*: (a) Defendant had exclusive knowledge of material information that was not known to Plaintiffs and class members; (b) Defendant concealed material information from Plaintiffs and class members; and/or (c) Defendant made partial representations which were false and misleading absent the omitted information.

153. Defendant's material misrepresentations and nondisclosures were likely to mislead reasonable consumers.

154. Defendant's nondisclosures and omissions of material facts deceive and have a tendency to deceive reasonable consumers, and therefore were unfair and fraudulent.

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

155. Defendant's nondisclosures and omissions of material facts are material, such that a reasonable person would attach importance to the information and would be induced to act on the omissions in making purchase decisions.

156. Plaintiffs and class members reasonably relied on Defendant's nondisclosures and omissions of material facts, and would have acted differently if they had known the truth.

157. By its conduct and omissions alleged herein, Defendant received more money from Plaintiffs and class members than it should have received, and that money is subject to restitution.

158. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent conduct, Plaintiffs and class members suffered injury-in-fact and lost money.

159. But for Defendant's omissions of material facts and Defendant's deceptive conduct, Plaintiffs and class members made purchases they otherwise would not have made, paid more than they otherwise would have paid for the products they purchased, and were required to pay for utilizing the key video recording, video playback, and snapshot features of the products which they had reasonably believed was already included in the initial purchase price of the products.

160. Defendant's false advertising scheme has harmed all of its customers by fraudulently increasing demand for its products, thereby shifting the demand curve and enabling Defendant to charge its customers more than it otherwise could have charged and to generate more sales than it otherwise would have generated.

161. Plaintiffs, class members, and the general public lack an adequate remedy at law to remedy and/or mitigate the totality of the injuries and misconduct described herein.

162. Defendant's conduct as alleged herein caused substantial injury to Plaintiffs, class members, and the public. Defendant's conduct is ongoing and will continue and recur absent a permanent injunction. Accordingly, Plaintiffs seek an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices. Plaintiffs further seek an order granting restitution to Plaintiffs and the classes in an amount to be proven at trial.

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Plaintiffs further seek an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

163.    Plaintiffs, on behalf of themselves and the classes, seek injunctive relief to require Defendant to give Plaintiffs and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices.

164.    Plaintiffs, each in their individual capacity, seek public injunctive relief under the UCL to protect the general public from Defendant's deceptive conduct, false advertising, and omissions of material facts. Specifically, in order to prevent injury to the general public, Plaintiffs, each in their individual capacity, seeks a public injunction requiring Defendant to disclose, on the outside of the boxes of its Ring video doorbell and security camera products, and on the Ring website product pages for the products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional per-device fee of $3 per month or $30 per year.

**PRAYER FOR RELIEF**

A.    In order to prevent injury to the general public, Plaintiffs Brandon Jack and Jean Alda, individually and as private attorneys general, ask that the Court enter a public injunction requiring Defendant to prominently disclose on the outside of the boxes of its Ring video doorbell and security camera products, and on the Ring website product pages for the products, that the video recording, playback and snapshot features of the products will not function unless the purchaser also buys the Protect Plan from Ring for an additional fee of $3 per month or $30 per year, per device.

B.    Further, on behalf of themselves and the proposed classes, Plaintiffs request that the Court order relief and enter judgment against Defendant as follows:

1)    Declare this action to be a proper class action, certifying the classes defined herein, and appoint Plaintiffs and their counsel to represent the classes;

2)    Order disgorgement or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Defendant obtained, directly

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

or indirectly, from Plaintiffs and the members of the classes or otherwise as a result of the unlawful conduct alleged herein;

3) Permanently enjoin Defendant from the unlawful conduct alleged herein;

4) Order Defendant to give Plaintiffs and class members the ability to use the video recording, playback, and snapshot features of their Ring products at no charge (*i.e.*, without the payment of any additional fee) for the life of those devices;

5) Retain jurisdiction to police Defendant's compliance with the permanent injunctive relief;

6) Order Defendant to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

7) Provide all other relief to which Plaintiffs and the classes may show themselves justly entitled.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues so triable.

DATED this 18th day of November, 2020.

Presented by:

HATTIS & LUKACS

By: [signature]

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen DeNittis, Esq.*
Shane T. Prince, Esq.*
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

Attorneys for Plaintiffs and the Proposed Classes

**Pro hac vice application to be submitted*

**HATTIS & LUKACS**
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

# EXHIBIT A

Jean Alda Receipt

More saving.
More doing.

SHELENE_LARSEN@HOMEDEPOT.COM
3272 W SHAW AVE, FRESNO CA 559-277-9600

0663 00026 52634 09/16/17 01:58 PM
CASHIER MARCOS

852239005482 RING FLD CAM <A> 249.00
RING FLD CAM - WHITE
1002-584-379 RING VID DB2 <A> 199.00
RING WIRELESS VIDEO DOORBELL 2

SUBTOTAL 448.00
SALES TAX 35.73
TOTAL $483.73
XXXXXXXXXXXX VISA USD$ 483.73

AUTH CODE 086238/4261427
Chip Read TA
AID A0000000031010 4348115345205645534

TVR 0080008000
IAD 06010A03602002
TSI F800
ARC 00

0663 26 52634 09/16/2017 3785

# EXHIBIT B

Order 001-698496 confirmed

From: Ring Team (help@shop.ring.com)

To: [redacted]

Date: Tuesday, May 14, 2019, 10:51 PM PDT

ORDER 001-698496

## Thank you for your purchase!

Hi Brandon, we're getting your order ready to be shipped. We will notify you when it has been sent. View your order to register for text updates.

View your order

or Visit our store

## Order summary

| Item | Price |
|---|---|
| **Video Doorbell 2 × 2**<br>Multi | $398.00 |

| | |
|---|---|
| Subtotal | **$398.00** |
| Shipping | **$0.00** |
| Taxes | **$33.84** |
| Total | **$431.84 USD** |

## Customer information

**Shipping address**

Brandon Jack
[redacted]
San Francisco CA [redacted]
United States

**Billing address**

Brandon Jack
[redacted]
San Francisco CA [redacted]
United States

**Shipping method**

FedEx Ground

**Payment method**

VISA Ending in [redacted] — **$431.84**

If you have any questions, reply to this email or contact us at help@ring.com. To initiate a return click here.

# EXHIBIT C

DocuSign Envelope ID: 55492339-A338-4326-A8B2-B4560F066F9F

Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
400 108th Ave NE, Ste 500
Bellevue, WA 98004
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

Stephen DeNittis, Esq. (Pro Hac Vice application to be submitted)
Shane T. Prince, Esq. (Pro Hac Vice application to be submitted)
DENITTIS OSEFCHEN PRINCE, P.C.
5 Greentree Centre, Suite 410
525 Route 73 N.
Marlton, New Jersey 08057
Telephone: (856) 797-9951
Facsimile: (856) 797-9978
Email: sdenittis@denittislaw.com
Email: sprince@denittislaw.com

*Attorneys for Plaintiffs*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**CITY AND COUNTY OF SAN FRANCISCO**

**UNLIMITED CIVIL**

BRANDON JACK and JEAN ALDA,

Plaintiffs,

v.

RING LLC,

Defendant.

Case No. ______________

**DECLARATION OF BRANDON JACK PURSUANT TO THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT (CAL. CIVIL CODE § 1780(d))**

**[FILED CONCURRENTLY WITH COMPLAINT]**

DocuSign Envelope ID: 55492339-A338-4326-A8B2-B4560F066F9F

I, BRANDON JACK, hereby declare and state as follows:

1. I am over the age of 18 years, and I am a plaintiff in the above-titled civil action. The facts contained herein are based on my personal knowledge except as to facts stated upon information and belief and, as to those, I believe it to be true.

This civil action pleads a cause of action for violation of the California Consumers Legal Remedies Act ("CLRA") against Defendant Ring LLC ("Ring"). This civil action has been commenced in a county described in Section 1780(d) of the California Civil Code as a proper place for the trial of the action.

3. This action is being commenced in the County of San Francisco, California, because that is a county in which the Defendant Ring LLC is doing business. Defendant is doing business in the County of San Francisco by, without limitation, advertising and selling its goods and services through its website (www.ring.com) to persons, including consumers, located in the County of San Francisco.

4. This action is also being commenced in the County of San Francisco because a transaction that is the subject of the Complaint took place in the County of San Francisco. I purchased two Ring Video Doorbell 2 products from my home in San Francisco via the Internet from the Ring website, and the products were delivered to my home in San Francisco.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on 11/16/2020, in San Francisco County, California.

DocuSigned by:
Brandon Jack
08D46FA8DEB44A8...
BRANDON JACK

HATTIS & LUKACS
400 108th Ave. NE, Ste 500
Bellevue, WA 98004
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

# EXHIBIT B

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Daniel Hattis, 232141<br>Hattis & Lukacs<br>400 108th Ave NE, Suite 500<br>Bellevue, WA 98004<br>TELEPHONE NO.: (650)980-1990<br>ATTORNEY FOR *(Name)*: Plaintiff | **FOR COURT USE ONLY**<br>ELECTRONICALLY<br>**FILED**<br>*Superior Court of California, County of San Francisco*<br>**12/30/2020**<br>**Clerk of the Court**<br>**BY: YOLANDA TABO-RAMIREZ**<br>**Deputy Clerk** |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF**<br>Superior Court of California, San Francisco County<br>400 McAllister Street<br>San Francisco, CA 94102 | |
| PLAINTIFF/PETITIONER: Brandon Jack and Jean Alda, et al.<br>DEFENDANT/RESPONDENT: Ring LLC, et al | CASE NUMBER:<br>CGC-20-588258 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

**BY FAX**

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:

Complaint, Summons, Case Management Statement, Notice of Alternative Dispute Resolution Information Package

3. a. Party served: Ring LLC

   b. Person Served: CSC - Susie Vang - Person Authorized to Accept Service of Process

4. Address where the party was served: 2710 Gateway Oaks Drive, Suite 150N
   Sacramento, CA 95833

5. I served the party

   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 12/23/2020 (2) at (time): 1:30PM

6. The "Notice to the Person Served" (on the summons) was completed as follows:

   d. on behalf of:

   Ring LLC
   under: Other: Limited Liability Company

7. **Person who served papers**

   a. Name: Tyler Anthony DiMaria

   b. Address: One Legal - P-000618-Sonoma
   1400 North McDowell Blvd, Ste 300
   Petaluma, CA 94954

   c. Telephone number: 415-491-0606

   d. The fee for service was: $ 40.00

   e I am:

   (3) registered California process server.
   (i) Employee or independent contractor.
   (ii) Registration No.: 2006-06
   (iii) County: Sacramento

8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 12/23/2020

Tyler Anthony DiMaria
(NAME OF PERSON WHO SERVED PAPERS) (SIGNATURE)

# EXHIBIT C

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RING LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
BRANDON JACK and JEAN ALDA, For Themselves, As Private Attorneys General, and/or On Behalf Of All Others Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡**AVISO!** Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court
400 McAllister Street, San Francisco, California 94102

CASE NUMBER:
*(Número del Caso):* [illegible]

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Daniel M. Hattis, Esq., Hattis & Lukacs, 400 108th Ave NE, Ste 500, Bellevue, WA 98004; (425) 233-8650

DATE: *(Fecha)* DEC 9 2020 Clerk, by *(Secretario)* ANNA L. TORRES, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).* CLERK OF THE COURT

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Ring LLC
under:
☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☒ other *(specify)*: Corporation Code 17061
4. ☐ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

EXHIBIT C

# EXHIBIT D

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Daniel M. Hattis, Esq. (SBN 232141)
HATTIS & LUKACS
400 108th Ave NE, Suite 500
Bellevue, WA 98004
TELEPHONE NO.: (425) 233-8650 FAX NO.: (425) 412-7171
ATTORNEY FOR (Name): Brandon Jack and Jean Alda

FOR COURT USE ONLY

FILED
Superior Court of California
County of San Francisco
NOV 19 2020
CLERK OF THE COURT
BY: [signature] Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS: 400 McAllister St.
CITY AND ZIP CODE: San Francisco 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Brandon Jack and Jean Alda v. Ring LLC

## CIVIL CASE COVER SHEET

☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less)

**Complex Case Designation**
☐ Counter ☐ Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: CGC-20-588258

JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☑ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☑ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify)*: (1) CLRA; (2) False Advertising Law; (3) UCL
5. This case ☑ is ☐ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 11/18/2020
Daniel M. Hattis, Esq., Counsel for Plaintiff
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

## NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

CIVIL CASE COVER SHEET

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

NO SUMMONS ISSUED

EXHIBIT D

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease
    - Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

# EXHIBIT E

CASE NUMBER: CGC-20-588258 BRANDON JACK VS. RING LLC

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **APR-21-2021**

**TIME:** **10:30AM**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA 94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state. **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

## ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION, AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

Plaintiff **must** serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint. (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk. All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400 McAllister Street, Room 103-A**
**San Francisco, CA 94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

EXHIBIT E



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Information Package

The plaintiff must serve a copy of the ADR Information Package on each defendant along with the complaint. Cross-complainants must serve a copy of the ADR Information Package on any new parties to the action together with the cross-complaint. (CRC 3.221(c).)

**WHAT IS ADR?**

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to trial.

**WHY CHOOSE ADR?**

It is the policy of the Superior Court that every long cause, non-criminal, non-juvenile case should participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial. (Local Rule 4.)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**Electing to participate in an ADR process does not stop the time period to respond to a complaint or cross-complaint**

**WHAT ARE THE ADR OPTIONS?**

The San Francisco Superior Court offers different types of ADR processes for general civil matters. The programs are described below:

**1) MANDATORY SETTLEMENT CONFERENCES**

Settlement conferences are appropriate in any case where settlement is an option. The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute. Mandatory settlement conferences are ordered by the court and are often held near the date a case is set for trial, although they may be held earlier if appropriate. A party may elect to apply to the Presiding Judge for a specially set mandatory settlement conference by filing an ex parte application. See Local Rule 5.0 for further instructions. Upon approval by the Presiding Judge, the court will schedule the conference and assign a settlement conference officer.

**2) MEDIATION**

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO (BASF),** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending. Experienced professional mediators work with parties to arrive at a mutually agreeable solution. The mediators provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. BASF staff handles conflict checks and full case management. The success rate for the program is 67% and the satisfaction rate is 99%. BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the fee are available to those who qualify. For more information, call 415-982-1600 or email adr@sfbar.org.

**(B) JUDICIAL MEDIATION PROGRAM** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at any time throughout the litigation process. Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge. Information about the Judicial Mediation Program may be found by visiting the ADR page on the court's website: www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may select any private mediator of their choice. The selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

**(D) COMMUNITY BOARDS MEDIATION SERVICES:** Mediation services are offered by Community Boards (CB), a nonprofit resolution center, under the Dispute Resolution Programs Act. CB utilizes a three-person panel mediation process in which mediators work as a team to assist the parties in reaching a shared solution. To the extent possible, mediators are selected to reflect the demographics of the disputants. CB has a success rate of 85% for parties reaching a resolution and a consumer satisfaction rate of 99%. The fee is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available. For more information, call 415-920-3820 or visit communityboards.org.

**3) ARBITRATION**

An arbitrator is a neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION**

When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication  that is earlier, faster, less formal, and usually less expensive than a trial. Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration.  (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.1 allows  for mediation  in lieu of judicial arbitration,  so long as the parties file a stipulation  to mediate after being assigned to judicial arbitration. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION**

Although not currently a part of the court's ADR program, civil disputes may also be  resolved  through private  arbitration.  Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

**HOW DO I PARTICIPATE IN ADR?**

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's or court-affiliated ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet and available on the court's website); or
- Indicating your ADR preferences on the Case Management Statement (available on the court's website); or
- Contacting the court's ADR Department (see below), the Bar Association of San Francisco's ADR Services, or Community Boards.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103-A, San Francisco, CA 94102
415-551-3869
Or, visit the court's ADR page at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE AND FILE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF OR COMMUNITY BOARDS TO ENROLL IN THEIR LISTED PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF OR COMMUNITY BOARDS.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address) | FOR COURT USE ONLY |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA 94102-4514 | |
| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |
| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: ____________________<br><br>DEPARTMENT 610 |

1) **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐ **Mediation Services of the Bar Association of San Francisco (BASF)** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐ **Mediation Services of Community Boards (CB)** – Service in conjunction with DRPA, CB provides case development and one three-hour mediation session. Additional sessions may be scheduled. The cost is $45-$100 to open a case, and an hourly rate of $180 for complex cases. Reduction and waiver of the fee are available to those who qualify. communityboards.org

☐ **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐ **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

☐ **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org/divisions/civil/dispute-resolution

Judge Requested (see list of Judges currently participating in the program): ____________________

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days ☐ 90-120 days ☐ Other (please specify) ____________________

☐ **Other ADR process (describe)** ____________________

2) The parties agree that the ADR Process shall be completed by (date): ____________________

3) Plaintiff(s) and Defendant(s) further agree as follows:

____________________

| | |
|---|---|
| ____________________<br>Name of Party Stipulating | ____________________<br>Name of Party Stipulating |
| ____________________<br>Name of Party or Attorney Executing Stipulation | ____________________<br>Name of Party or Attorney Executing Stipulation |
| ____________________<br>Signature of Party or Attorney | ____________________<br>Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ [illegible] | [illegible] ☐ Defendant ☐ Cross-defendant |
| Dated: ____________________ | Dated: ____________________ |

[illegible]

PROOF OF SERVICE BY OVERNIGHT MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566. I am familiar with the practice at my place of business for collection and processing of correspondence for overnight delivery by Overnight Service. Such correspondence will be deposited with a facility regularly maintained for Overnight Service for receipt on the next business day.

On January 22, 2021, I served the following document(s):

**DEFENDANT RING LLC'S NOTICE OF REMOVAL** by placing a **true copy** in a separate envelope for each addressee named below, with the name and address of the person served shown on the envelope as follows:

| | |
|---|---|
| Daniel M. Hattis, Esq.<br>Paul Karl Lukacs<br>Hattis & Lukacs<br>400 108th Ave NE, Suite 500<br>Bellevue, WA 98004 | Stephen DeNittis, Esq.<br>Shane T. Prince, Esq.<br>Denittis Osefchen Prince, P.C.<br>5 Greentree Centre, Suite 410<br>525 Route 73 N.<br>Marlton, New Jersey 08057 |

and by sealing the envelope and placing it for collection and delivery by an overnight mail service with delivery fees paid or provided for in accordance with ordinary business practices.

Executed on January 22, 2021, at Los Angeles, California.

☐ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☑ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Frank M. Romero — *Frank M. Romero*

Print Name — Signature