UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDON JACK, et al., | Case No. 21-cv-00544-HSG |
| Plaintiffs, | **ORDER GRANTING MOTION TO REMAND** |
| v. | Re: Dkt. No. 16 |
| RING LLC, | |
| Defendant. | |

Pending before the Court is the motion to remand filed by Plaintiffs Brandon Jack and Jean Alda. Dkt. No. 16 ("Mot."). The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS** the motion.

## I.   BACKGROUND

Plaintiffs initially filed this putative class action against Defendant Ring LLC on November 19, 2020, in San Francisco Superior Court. *See* Dkt. No. 1, Ex. A ("Compl."). Defendant manufactures, markets, distributes, and sells Ring video doorbells and Ring security cameras. *Id.* at ¶ 15. Both the doorbell and security camera integrate with a smartphone "app," allowing users to view real-time and video recordings. *See id.* at ¶¶ 20–23. Plaintiffs allege that Defendant failed to disclose that in order to record, play back, and view snapshots from the doorbell and security camera, users have to pay an additional $3 fee per month (or a yearly fee of $30). *See id.* at ¶¶ 1–9, 25–29, 36, 45. Plaintiffs assert that these functions are "fundamental" to the products, and that without them, the doorbell and security camera "lose much of their usefulness and effectiveness." *See id.* at ¶ 28. Although the boxes for the doorbell and security camera identified their key features, Plaintiffs allege that they did not disclose the monthly or

1    yearly fees.  *See id.* at ¶¶ 41–42, 51.  Plaintiffs further allege that Defendant's webpages also fail

2    to disclose these fees.  *See id.* at ¶ 53.

3         Based on these facts, Plaintiffs bring causes of action for violations of the Consumer Legal

4    Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; California's False Advertising Law, Cal. Bus. &

5    Professions Code §§ 17500, *et seq.*; and California's Unfair Competition Law, Cal. Bus. &

6    Professions Code §§ 17200 *et seq.  Id.* at  ¶¶ 103–164.  Plaintiffs also seek to represent several

7    classes of California consumers who purchased the Ring Video Doorbell 2 and the Ring

8    Floodlight Cam, both in store and on Defendant's website.  *See id.* at ¶¶ 85–88.  Plaintiffs request

9    that the Court order Defendant to provide Plaintiffs with the ability to use the recording, playback,

10   and snapshot functions without charge for the life of their devices.  *Id.* at 29 ("Prayer for Relief").

11   Additionally, and as relevant to this motion, Plaintiffs also ask that the Court:

12

13           enter a public injunction requiring Defendant to prominently disclose
             on the outside of the boxes of its Ring video doorbell and security
14           camera products, and on the Ring website product pages for the
             products, that the video recording, playback and snapshot features of
15           the products will not function unless the purchaser also buys the
             Protect Plan from Ring for an additional fee of $3 per month or $30
16           per year, per device.

17   *Id.* at 28.

18        On January 22, 2021, Defendant removed this action to federal court, claiming that the

19   Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C.

20   § 1332(d).  *See* Dkt. No. 1 ("Notice of Removal") at 2–5.  In the alternative, Defendant also stated

21   that the Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a).  *See id.* at 5–6.

22   Plaintiffs now move to remand this action to San Francisco Superior Court, arguing that the Court

23   lacks subject matter jurisdiction under either CAFA or traditional diversity jurisdiction.  *See* Mot.

24   **II.    LEGAL STANDARD**

25        A suit may be removed from state court to federal court only if the federal court would

26   have had subject matter jurisdiction over the case.  *See* 28 U.S.C. § 1441(a); *see Caterpillar Inc. v.*

27   *Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that originally could have been filed

28   in federal court may be removed to federal court by the defendant.").  "If at any time before final

1    judgment it appears that the district court lacks subject matter jurisdiction, the case shall be

2    remanded." 28 U.S.C. § 1447(c). The party seeking removal bears the burden of establishing

3    federal jurisdiction. *See Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083,

4    1087 (9th Cir. 2009); *see also Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 683–685

5    (9th Cir. 2006) ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as

6    before, on the proponent of federal jurisdiction.").

7    **III.    DISCUSSSION**

8       **A.    CAFA Jurisdiction**

9          Under CAFA, a class action may be removed if the amount in controversy exceeds $5

10   million, the proposed class consists of more than 100 members, and "any member of a class of

11   plaintiffs is a citizen of a State different from any defendant." *See* 28 U.S.C. § 1332(d)(2),

12   (d)(5)(B). Because just a single plaintiff must be a citizen of a different state from any single

13   defendant, CAFA "abandons the complete diversity rule for covered class actions" in exchange for

14   a minimal diversity standard. *See Abrego*, 443 F.3d at 680.

15         Here, the parties dispute whether Defendant can establish minimum diversity. The parties

16   appear to agree that the named Plaintiffs and putative class members are all citizens of California.

17   *See* Mot. at 2; Dkt. No. 19 ("Opp.") at 5. However, the parties disagree about how to determine

18   Defendant's citizenship. Defendant, a limited liability company ("LLC"), has its principal place

19   of business in California; is organized under the laws of Delaware; and its member is a citizen of

20   both Washington and Delaware. *See id.* at ¶ 15; Notice of Removal at 2. Plaintiffs contend that

21   under CAFA, an LLC is an "unincorporated association," whose citizenship should be determined

22   by its principal place of business—here, California. *See* Mot. at 12–18. Under this interpretation,

23   Defendant could not meet even minimum diversity. Defendant responds that CAFA did not alter

24   the longstanding rule under traditional diversity jurisdiction that an LLC's citizenship is

25   determined based on the citizenship of its members—here, Washington and Delaware. *See* Opp.

26   at 5–12.

27         Plaintiffs acknowledge that in traditional diversity cases, LLCs are treated like partnerships

28   and are considered citizens of every state of which their members are citizens. *See Johnson v.*

United States District Court
Northern District of California

United States District Court
Northern District of California

*Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  However, they urge that CAFA created an exception to this rule.  *See* Mot. at 12–15.  Plaintiffs first point to the text of CAFA, which provides in relevant part that "*an unincorporated association* shall be deemed to be a citizen of the state where it has its principal place of business and the State under whose laws it was organized." 28 U.S.C. § 1332(d)(10) (emphasis added).  Based on this language, Plaintiffs contend that CAFA created a dichotomy for purposes of jurisdiction:  corporations versus all other entities.  *See* Mot. at 14.  Plaintiffs urge that because an LLC is not a corporation, it should be considered an "unincorporated association," and its citizenship should be based on its principal place of business.[1]  *See id.*  Plaintiffs also point out that the majority of courts that have considered this issue have held that LLCs are "unincorporated associations" under CAFA.  *See, e.g.*, *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700–05 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC*, No. 18-CV-2852-BEN-MSB, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019) (collecting cases).

The Ninth Circuit has not directly weighed in on this issue.  But in a concurrence, one of the judges of the Ninth Circuit expressly found a limited partnership to be an unincorporated association under CAFA.  *See Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032, & n.13 (9th Cir. 2009) (Kleinfeld, J., concurring) (applying § 1332(d)(10)).  And as noted above, the Ninth Circuit has indicated that "LLCs resemble both partnerships and corporations." *Johnson*, 437 F.3d at 899.  The concurrence in *Davis* explained that "CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes . . . ." *See id.*  In light of *Davis*, it seems likely that the Ninth Circuit would consider an LLC an unincorporated association under § 1332(d)(10).

This is consistent with the Fourth Circuit's reasoning in *Ferrell v. Express Check*.  591 F.3d at 700–05.  In *Ferrell*, the Fourth Circuit reasoned that the Supreme Court has historically characterized business entities as falling into one of two categories:  corporations or

---

[1] Plaintiffs appear to acknowledge that even under its interpretation of CAFA, Defendant is also a citizen of the state under whose laws it is organized—here, Delaware. *See* Mot. at 13, n.6. However, Defendant does not suggest that its Delaware citizenship could establish minimum diversity under CAFA, and the Court does not address that argument *sua sponte* here.

1    unincorporated associations. *Ferrell*, 591 F.3d at 702–03 (collecting cases).  Under this

2    framework, "corporations were deemed to be citizens of the State in which they were

3    incorporated, and all other business enterprises were referred to as unincorporated associations and

4    treated effectively as citizens of the States of which their members were citizens." *Id.* at 703.  The

5    *Ferrell* court reasoned that Congress understood and enacted CAFA with awareness of this

6    historical framework.  *Id.* at 703–04; *see also Abrego*, 443 F.3d at 684 (" [W]e presume that

7    Congress is aware of the legal context in which it is legislating.").  The Fourth Circuit also

8    reasoned that this interpretation was consistent with Congress' intent "to give CAFA broad

9    application." *Ferrell*, 591 F.3d at 705; *see also Dart Cherokee Basin Operating Co., LLC v.*

10   *Owens*, 574 U.S. 81, 89 (2014) (noting that "Congress enacted [CAFA] to facilitate adjudication

11   of certain class actions in federal court").  Applying the traditional diversity rule—considering an

12   LLC a citizen of every state of which its members are citizens—would likely undermine this

13   intent.  The Court finds this reasoning persuasive and adopts it here.

14           Defendant cites several district court cases that determined an LLC's citizenship based on

15   the citizenship of its members, even under CAFA.  *See* Opp. at 6–7.  However, none of these cases

16   grapple with the language of § 1332(d)(10).  Rather, they appear to assume—without discussion—

17   that CAFA did not change how courts evaluate an LLC's citizenship.  *See, e.g.*, *Angiano v.*

18   *Anheuser-Busch InBev Worldwide, Inc.*, No. CV 21-00435 PA(PVCX), 2021 WL 364641, at *2

19   (C.D. Cal. Feb. 2, 2021).  It is not even clear if the parties raised this argument in any of these

20   cases.  But as noted above, judges in the Ninth and Fourth Circuits have suggested that CAFA did

21   intend to change the traditional diversity rule for LLCs.  The Court therefore finds that

22   Defendant's citizenship is based on its principal place of business.[2]  And because there is no

23   dispute that Defendant's principal place of business is California, Defendant cannot establish

24   
25   [2] The Court notes that Plaintiffs' counsel has taken different positions on this issue in the past.  In
     *Andrews v. Ring LLC*, 5:20-cv-00889-RKG-SP (C.D. Cal.), counsel alleged that Ring was a
26   citizen of Washington, meaning that the Court had jurisdiction under CAFA.  The Court has some
     concern about counsel's apparent willingness to apply whatever interpretation of § 1332(d)(10) it
27   believes is most advantageous in the moment.  And this flip-flop seems at least potentially in
     tension with counsel's Rule 11 obligations.  Still, because the Court believes that Plaintiffs'
28   current interpretation of § 1332(d)(10) is correct—an LLC is an unassociated incorporation for
     purposes of CAFA—the Court concludes that Defendant has not established minimum diversity.

United States District Court
Northern District of California

1   minimum diversity under CAFA.[3]

2       **B.**    **Traditional Diversity Jurisdiction**

3       Defendant's inability to establish CAFA jurisdiction does not, on its own, preclude federal

4   jurisdiction, as "[f]ederal diversity jurisdiction still exists for other class actions that satisfy the

5   general diversity jurisdiction provision of § 1332(a)." *See Serrano v. 180 Connect, Inc.*, 478 F.3d

6   1018, 1021, n.4 (9th Cir. 2007).  The Court therefore considers Defendant's alternative argument

7   that the Court has jurisdiction under traditional diversity.

8       Traditional diversity jurisdiction requires complete diversity of citizenship and an amount

9   in controversy greater than $75,000.  *See* 28 U.S.C. § 1332(a).  As noted above, under traditional

10  diversity jurisdiction, "an LLC is a citizen of every state of which its owners/members are

11  citizens." *Johnson*, 437 F.3d at 899.  Because Defendant's member is a citizen of Delaware and

12  Washington under this analysis, the parties appear to agree that complete diversity exists.  *See*

13  Mot. at 18–25; Opp. at 12–13.  But Plaintiffs contend that Defendant cannot meet the $75,000

14  amount in controversy requirement.

15      Plaintiffs argue that their individual monetary claims for relief are minimal.  Plaintiff Jack,

16  for example, seeks to recover the $398 he paid for his devices, as well as the $3 per month fee for

17  he has paid and continues to pay for both devices (currently a total of $512).  *See* Compl. ¶¶ 55,

18  68–69.  Plaintiff Alda seeks to recover the $249 he paid for the security camera, as well as the $3

19  monthly fees he has paid and continues to pay for the device (currently a total of $448).  *See id.* at

20  ¶¶ 38, 46–48.  Such monetary relief, Plaintiffs urge, is far from the $75,000 minimum amount in

21  controversy.  *See* Mot. at 18–22.

22      Plaintiffs further argue that Defendant may not aggregate Plaintiffs' individual damages to

23  reach the $75,000 amount in controversy.  *See* Mot. at 18–22.  Under this non-aggregation rule,

24  "multiple plaintiffs who assert separate and distinct claims are precluded from aggregating them to

25  satisfy the amount in controversy requirement." *Urbino v. Orkin Servs. of California, Inc.*, 726

26

27

28  ---
    [3] Because the Court lacks CAFA jurisdiction, it need not address whether the home state controversy exception applies.

*United States District Court*
*Northern District of California*

6

1    F.3d 1118, 1122 (9th Cir. 2013).  Defendants are similarly precluded from aggregating plaintiffs'

2    claims.  *See Snow v. Ford Motor Co.*, 561 F.2d 787, 789 (9th Cir. 1977).

3         Defendant appears to agree that the non-aggregation rule precludes it from aggregating the

4    *monetary* damages to reach the amount in controversy.  Plaintiffs' claims arise from their own

5    unrelated and individually cognizable transactions.  However, Defendant contends that the non-

6    aggregation rule does not apply to Plaintiffs' requested public injunctive relief.  *See* Opp. at 13–

7    16.  Defendant asserts that "Plaintiffs' individual requests for public injunctive relief" amount to

8    "purely individualized relief that does not implicate any other individual's claims."  *Id.* at 13–14.

9    Defendant appears to suggest that each Plaintiff seeks public injunctive relief without regard to the

10   class, such that the Court may consider the entire cost to Defendant of complying with the

11   injunction.  Defendant argues that changing all of its packaging and advertising for the doorbell

12   and security cameras in the way requested by Plaintiffs "would substantially exceed $75,000."

13   Opp. at 16.  Defendant does not provide an estimate of the cost of these changes, but states that it

14   "is estimated to be in the millions" because "[t]he value of the products currently on shelves with

15   their existing labels is over a million dollars."  *See* Dkt. No. 19-2 at ¶ 4.

16        But Defendant does not cite a single case in which a court has adopted its theory of valuing

17   injunctive relief.  Rather, Defendant relies on the California Supreme Court opinion in *McGill v.*

18   *Citibank, N.A.*, 2 Cal. 5th 945, 951–54 (Cal. 2017), which considered the validity of an arbitration

19   provision.  *See* Opp. at 15–16.  In *McGill*, the California Supreme Court held that arbitration

20   provisions are invalid and unenforceable if they purport to waive a plaintiff's statutory right to

21   seek public injunctive relief in any forum.  *See id.*  The *McGill* Court noted that public injunctive

22   relief "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to

23   the general public."  *Id.* at 951.  But the court also explained that a plaintiff may request public

24   injunctive relief, even if suing in his or her individual capacity rather than in a representative

25   capacity.  *See id.* at 959–60.  The case said nothing about how to value such public injunctive

26   relief.

27        In contrast, the Ninth Circuit has held that district courts must value an injunction for

28   purposes of the amount in controversy based on the benefit to each individual plaintiff, and not on

7

United States District Court
Northern District of California

1    the cost of compliance to the defendant.  *See Snow*, 561 F.2d at 791; *see also In re Ford Motor*

2    *Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958–62 (9th Cir. 2001).  In *Snow*, much like here,

3    the plaintiff alleged that the defendant had misrepresented the nature of its product (a towing

4    system for vehicles).  *See Snow*, 561 F.2d at 788.  The plaintiff alleged that the towing package

5    did not include a wiring kit to connect the trailer's electrical system to that of the towing vehicle.

6    *Id.*  The plaintiff sought to represent a class of consumers, and sought (1) damages in the amount

7    of the cost of the wiring kit for himself and each purchaser (approximately $11 each); and

8    (2) injunctive relief to preclude the defendant from selling its towing package without the wiring

9    kit.  *Id.*

10          The Court recognized that "[i]n suits involving equitable relief, the dollar value of the

11   object in controversy may be minimal to the plaintiff, but costly to the defendant."  *Id.*

12   Nevertheless, the Court reasoned that "where the equitable relief sought is but a means through

13   which the individual claims may be satisfied, the ban on aggregation [applies] with equal force to

14   the equitable as well as the monetary relief."  *Id.* at 790.  The Ninth Circuit concluded that "[t]he

15   right asserted by plaintiffs is the right of individual future consumers to be protected from Ford's

16   allegedly deceptive advertising which is said to injure them in the amount of $11.00 each," an

17   amount below the amount in controversy threshold.  *Id.* at 790–91.  In short, the Ninth Circuit

18   precluded district courts from considering the entire cost to defendant of complying with any

19   requested injunctive relief.  Yet that is precisely what Defendant is asking the Court to do here:

20   consider the total cost to Defendant of changing all its packaging in future.  The Court rejects

21   Defendant's attempt to circumvent the Ninth Circuit's opinion in *Snow*, and finds that it has not

22   established that the $75,000 amount in controversy requirement for traditional diversity

23   jurisdiction is met in this case.

24   //

25   //

26   //

27   //

28   //

8

## IV.    CONCLUSION

Accordingly, the Court **GRANTS** the motion and **REMANDS** the case to San Francisco Superior Court.  The Clerk is directed to remand the case and close the file.

**IT IS SO ORDERED.**

Dated:  August 10, 2021

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California